## Probus v. Illinois Central Railroad Company.

(Decided June 7, 1918.)

### Appeal from Hardin Circuit Court.

1. Commerce—Interstate Commerce.—One engaged in handling steel rails which are to be used in repairing the track of an interstate railroad is engaged in interstate commerce.

2.  Master and Servant—Employers' Liability Act.—Both the employee and the employer must be engaged in interstate commerce in order that the employee may recover for personal injury under the Federal Employers' Liability Act, but it is not necessary that the employee, whose negligence is the prime cause of the injury, should also be engaged in interstate commerce.

3.  Master and Servant—Employers' Liability Act—Evidence.—Where the injured employee instituted his action under the Federal Employers' Liability Act, but the evidence tends to show that he was engaged in intrastate commerce only, the defendant company is entitled to a peremptory instruction at the conclusion of plaintiff's evidence, but the rule is otherwise where the evidence is conflicting, part of it tending to show that plaintiff's work was only in aid of interstate commerce, the question is one to be determined by a jury.

HAYNES CARTER for appellant.

L. A. FAUREST, TRABUE, DOOLAN & COX, M. A. ARNOLD and R. V. FLETCHER for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Cisero Probus, a man of mature years, who had performed duty as a trackman on a railroad, was engaged in November, 1916, by appellee, Illinois Central Railroad Company, as one of a crew of men to handle steel which was being loaded and unloaded upon and along its main tracks in Hardin county. While thus engaged Probus received an injury to his foot and ankle which disabled him for several months and caused him much pain and suffering. He instituted an action against the appellee company, in the Hardin circuit court, to recover damages for his injury. In this action it is alleged that appellee company is a common carrier, hauling freight and passengers from and into the state of Kentucky and other states for hire, and this allegation is not denied. The petition alleges facts sufficient to constitute a cause of action under the Federal Employers' Liability Act. After a demurrer by the defendant company was overruled, an answer was filed traversing the charges of negligence and denying responsibility, and the second paragraph was a plea averring contributory negligence on the part of Probus. The injury occurred on the second day on which Probus worked with the gang loading the steel. A train of flat cars, to which was attached boarding cars for the accommodation of the workmen, was used by the crew in taking up and distributing the steel.

It appears from the evidence that previous to the injury certain steel rails had been removed from the track and stacked on the right-of-way near thereto, and that the foreman in charge of the train and crew had orders from the company to take up and distribute part of this steel along the track to the section foremen, who were in need of steel for making repairs upon the track. According to appellant Probus' evidence, the crew would take up steel at one place and carry it along the line to a point where it was needed and there unload such part as required for the purpose of making the track secure, or for the purpose of repairing side tracks or spur lines. At the time of the injury Probus, with the other members of the gang, was taking up steel which was stacked near the track, and loading it on a flat car to be carried to another point, but to what point is uncertain, although Probus says he had information from the foreman in charge of the work that the steel was to be used to make repairs in the main line. Two men standing on the ground at each end of the stack of rails would pull a steel rail out of the stack so that the men could stand behind it and face the car on which they were to load it, and when the foreman, who stood on the car, gave the order all of the men, acting together, would pick up a steel rail and carry it to and cast it upon the car. After they had been engaged at this particular stack of steel, handling it in this manner for some time, Probus and others who were on the stack of steel were approaching the place where they would pick up the next rail when the two men on the ground, who were pulling the rail out so as to allow the men to get behind it to lift up the steel, suddenly and without warning to Probus, or the others, pulled a rail out in such way as to and it did strike Probus' foot, knocking it between two underlying rails, and while his foot was thus placed, overturned the rail pulled out upon his ankle and foot so as to cause Probus to fall off the stack of rails with his foot thus fastened between two rails, inflicting injury to Probus' foot and ankle. This is in brief the way the injury happened, as detailed by Probus. Evidence of certain other employees, taken in connection with that of Probus, tends to show that the steel rails which were then being loaded were to be and were in fact afterwards distributed along the line and again placed in the track as repairs, as and

when needed, and it is, therefore, contended that Probus, as well as the other members of the gang, was engaged in interstate commerce, they at the time being engaged in providing material with which to repair the main track of the railroad, which was admittedly an interstate common carrier.

At the conclusion of the evidence for the plaintiff the defendant company entered a motion for peremptory instruction upon the ground that the work which Probus was, at the time of his injury, engaged in performing did not constitute interstate commerce and was not in furtherance or aid of interstate commerce. This motion was sustained by the trial court and the jury instructed to prepare and return a verdict for the defendant company, which was done, and judgment accordingly entered.

Three grounds are relied upon for a reversal: (1) error of the court in giving peremptory instruction to the jury to find for the defendant; (2) error of the court in admitting incompetent evidence on behalf of defendant, and in rejecting competent evidence by plaintiff; (3) the verdict of the jury is contrary to the law and evidence.

It will only be necessary to consider the correctness of the ruling of the court in directing a verdict for the defendant company. If he was engaged in interstate commerce, then the court erred to his prejudice in sustaining the motion of the defendant railroad company for peremptory instruction in its favor, but if he was engaged in intrastate commerce, then the ruling of the court was correct.

One in the employ of an interstate railroad may be engaged in either interstate or intrastate commerce, depending upon the character of his employment at the time in question. If his efforts be employed in aiding, furthering or facilitating interstate commerce and be necessary to the business of the railroad as an interstate carrier, then he is engaged in interstate commerce, even though part of his time is taken up with work wholly connected with intrastate commerce.

One may not have a recovery for injury under the Federal Employers' Liability Act unless he was at the time of the infliction of the injury engaged in interstate commerce, and the employer (railroad) was an interstate common carrier. "The true test always is, is the

work in question a part of the interstate commerce in which the carrier is engaged?'' L. & N. Railroad Co. v. Parker's Admr., 165 Ky. 658; Illinois Central R. R. Co. v. Behrens, 233 U. S. 473; Mondou v. New York, New Haven & Hartford R. Co., *supra*; Seaboard Air Line Railway Co. v. Moore, 228 U. S. 433; St. Louis, San & Texas R. Co. v. Seale, 229 U. S. 158; North Carolina R. Co. v. Zachary, 232 U. S. 248, 256; Grand Trunk Western Ry Co. v. Lindsey.

The difficult question for determination in this case is: Was Probus engaged in interstate commerce, or was his work in aid only of intrastate commerce? The evidence is not altogether satisfactory as to which branch of commerce Probus was engaged in, but there is sufficient evidence to have warranted the trial court in submitting, by proper instruction, the question of whether the work which Probus was engaged in performing was interstate commerce or intrastate commerce. L. & N. R. R. Co. v. Parker's Admr., 242 U. S. 12; Ohio Valley Electric Railway Co. v. Blumfield Admrs., 180 Ky. 743. A person charged with and engaged in the duty of maintaining tracks, bridges, engines or cars, to be used by an interstate carrier in commerce between different states, is engaged in interstate commerce. Pederson v. Delaware, etc., R. Co. 229 U. S. 146. The appellee railroad company is admittedly an interstate common carrier, and the trackmen who worked upon the section keeping the main line in repair for the passage of interstate trains were engaged in interstate commerce as much as those charged with running the interstate trains. This is true no less of a line which is used for the passage of both interstate and intrastate trains. Likewise, is one engaged in interstate commerce who carries rivets, nuts and bolts to a bridge crew who are repairing a bridge over which interstate trains pass, even though at the time of the injury he be walking along the track carrying the supplies at a point distant from the bridge. It was also held in the case of L. & N. Railroad Co. v. Walker's Admr., 162 Ky. 209, that a laborer on a trestle, used by a railroad company in intrastate and interstate commerce, is engaged in interstate commerce within the meaning of the Federal Employers' Liability Act, and if said employee is injured after working hours, but while walking along the tracks going to boarding cars in

which he eats and sleeps after the day's work, he is nevertheless entitled to recover.

A carpenter injured while working on an extension to a railroad repair shop, was held engaged in work in aid of interstate commerce, where an old structure was already in use as an instrumentality of such commerce. Thompson v. C. N. O. & T. P. Ry. Co., 165 Ky. 256. A case very similar to the one at bar is C. N. O. & T. P. Ry. Co. v. Tucker, 168 Ky. 144, where it was held that a section hand while assisting in lifting a steel rail from its resting place on the right-of-way preparatory to bearing it to the road bed to be employed in repairing the track, was engaged in interstate commerce.

One engaged in operating a turn-table in a railroad yard which table is used in handling interstate trains is engaged in interstate commerce and entitled to the benefits of the Federal Employers' Liability Act. C. N. O. & T. P. Ry. Co. v. Kornhoff, 167 Ky. 353. So also is a pan puller in a railroad yard, engaged in dumping ashes from an engine, used to propel interstate trains, employed in interstate commerce, and entitled to the benefits of the Federal Employers' Liability Act. C. N. O. & T. P. Ry. Co. v. Clarke, 169 Ky. 662.

A baggage master, whose run was from Cincinnati, Ohio, to Maysville, Kentucky, and who was injured at Maysville, while assisting in side tracking the train to permit the passage of another, held to be engaged in interstate commerce and entitled to the benefits of the act. C. N. O. & T. P. Ry. Co. v. Shaw, 162 Ky. 537. A very interesting recent case is Hargrove v. Gulf C. & S. F. Ry. Co., 202 S. W. 188. This case appears to extend the rule so as to include an employee of an interstate carrier who is assisting in loading rails already removed from the track, and not again to be so used.

Appellee railroad relies upon the case of the Illinois Central Railroad Company v. Kelly, decided January, 1916, and found in 167 Ky. 745. That case is somewhat similar to the one under consideration but easily distinguishable from it. Kelly was engaged in loading steel which had been removed from the tracks, to be carried for storage at some other place, or to be sold and disposed of as scrap iron, and not to be employed in repairing the tracks. If the steel which Kelly was injured in loading had been intended for the repair of the track

at some other place in the line of the interstate carrier, as is claimed by Probus in this case, Kelly would have been entitled to the benefits of the Federal Employers' Liability Act.

Under the evidence presented we conclude that the trial court should have submitted to the jury, under proper instruction, the question of whether the appellant Probus was engaged in intrastate or interstate commerce, and if the jury found from the facts that Probus was engaged in interstate commerce, it should then have been directed to find and return a verdict for Probus, if it further believed from the evidence that Probus was injured and his injury was the result, in whole or in part, of the negligence of the railroad company, or of those employed with Probus in handling the rails.

For the reasons indicated the judgment is reversed for a new trial in conformity to this opinion.